774 So.2d 244 (2000)
STATE of Louisiana
v.
Ronald R. MARSHALL.
No. 99-KA-2176.
Court of Appeal of Louisiana, Fourth Circuit.
August 30, 2000.
Rehearing Denied September 29, 2000.
*246 Harry F. Connick, District Attorney, Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, for plaintiff/appellee.
*247 Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, for defendant/appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY, Judge PATRICK M. SCHOTT, Pro Tempore.
PLOTKIN, Judge.
The primary issues in this appeal are whether the defendant is entitled to a new trial after the trial court denied his request for change of appointed counsel and whether his counsel provided him ineffective assistance.

PROCEDURAL HISTORY
Defendant Ronald R. Marshall was charged by bill of information on April 1, 1998 with armed robbery, a violation of La. R.S. 14:64. Defendant pleaded not guilty at his April 6, 1998 arraignment. The trial court denied Defendant's motion to suppress the identification on May 8, 1998. On June 15, 1998, this court denied Defendant's writ application relating to the trial court's denial of his motion to dismiss hearsay statements. On June 26, 1998, this court transferred a writ application filed by Defendant to the trial court for consideration as a motion for speedy trial. Following trial, a twelve-person jury found Defendant guilty as charged on July 15, 1998. Defendant pleaded not guilty to the habitual offender information on July 23, 1998. The court adjudicated Defendant a second felony habitual offender on November 13, 1998. Defense counsel noted that Defendant wished him to file a motion for post verdict judgment of acquittal, which the trial court denied. On November 25, 1998, the trial court sentenced Defendant to forty-nine years at hard labor, without benefit of parole, probation or suspension of sentence, with credit for time served. The court denied Defendant's motion for reconsideration of sentence, and granted his motion for appeal.

STATEMENT OF FACTS
New Orleans Police Detective Calvin Brazley testified that on December 19, 1997, he received an anonymous tip by telephone that a man named Ronald Marshall had perpetrated a burglary at 2657 North Tonti Street in November 1997. After Det. Brazley found no police report on such a burglary, he proceeded to the address given, but found no one home. A neighbor informed him that the person who used to live there, Terry Hudson, moved to her mother's residence. Det. Brazley was unable to contact Ms. Hudson that day. Later, while going through paperwork, Det. Brazley came across information related to a shooting incident he had handled on December 11, 1997. The victim's name in that case was Ronald Marshall. Det. Brazley compiled a photographic lineup containing Defendant's photo, and subsequently contacted Ms. Hudson. Det. Brazley showed Ms. Hudson the lineup, and she immediately made a positive identification of Defendant's photograph. Det. Brazley testified on cross examination that Ms. Hudson reported to him that three men armed with guns broke into her home, and the defendant was one of them.
Terry Ann Hudson testified that on November 10, 1997, at approximately 8:30 p.m., she had just come home from the grocery store with her two children. She heard someone shaking the doorknob, and thought it was her younger brother. Ms. Hudson looked out of her peephole and saw two males on the pavement apparently passing by. She opened her door, and discovered one male on her porch. She asked him what he was doing, and stepped out of the residence. Ms. Hudson testified that the man brandished a gun once she was outside the door. The man on the porch, along with the two others, pushed their way into the residence. One man said all Ms Hudson had to do was to tell them where the money was, and they would be gone. Ms. Hudson replied that she did not have any money, and pleaded *248 with them not harm her children. One of the men told her to shut up. Ms. Hudson subsequently identified Defendant as the one who told her to shut up. Ms. Hudson testified that the men tore up her residence. The men told her and the children to go the back of the shotgun residence. In doing so, Ms. Hudson accidentally bumped into the defendant, who told her never to do that again. She and her children were made to lie down on the bathroom floor, and she was told by one or more gunmen not to call police, threatening that he knew where she lived, where she worked, and where her mother lived. Ms. Hudson said that after the incident she was so frightened that she lived with her mother for three months. At trial, Ms. Hudson identified the photographic lineup shown to her by Det. Brazley, as well as the photograph of the defendant she previously identified.
Ms. Hudson stated on cross examination that the defendant was not the individual who was at her door when she opened it. She said she saw the defendant going through her things in the second room of the residence. Ms. Hudson testified on redirect examination that the men took some costume jewelry and sixty dollars from her dresser.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

PRO SE ASSIGNMENT OF ERROR NO. 2
By these assignments of error, Defendant claims his trial counsel was ineffective in allowing hearsay testimony by Det. Brazley as to the substance of the tip he received which led to Defendant's arrest.
"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, (La.4/23/99), 751 So.2d 783, 802, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 195, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999); State v. Bordes, 98-0086, p. 7 (La. App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064; State v.. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175.
Appellate counsel, and defendant in his pro se brief, concede that defense counsel's actions were part of a trial strategy, as *249 evidenced by counsel's admission during his cross examination of Det. Brazley.
THE COURT:
I take it, as part of your strategy, you have obviously not objected to any of this hearsay
MR. MYERS:
No, Judge.
The trial court also noted for the record that counsel had earlier discussed the possible strategy. This court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Appellate counsel argues that the strategy was doomed to fail. However, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Bordes, quoting State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 1
By Defendant's first pro se assignment of error, he argues that the trial court erred in admitting the previously discussed hearsay testimony of Det. Brazley.
Defense counsel did not object to Det. Brazley's hearsay testimony. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La. C.Cr.P. art. 841(A); State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879; State v. Brooks, 98-0693, p. 9 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, writ denied, 99-2519 (La.2/25/00), 755 So.2d 247. Because defense counsel failed to object to Det. Brazley's testimony, Defendant is precluded from raising this issue on appeal.

PRO SE ASSIGNMENT OF ERROR NO. 3
By this assignment of error, Defendant claims that the trial court erred in denying his motion to dismiss or substitute counsel without first conducting a hearing on the matter.
A defendant's right to assistance of counsel is protected by the United States and Louisiana constitutions. U.S. Const.Amend. VI; La. Const. art I, § 13. "`As a general proposition a person accused in a criminal trial has the right to counsel of his choice.'" State v. Jones, 97-2593, p. 3 (La.3/4/98), 707 So.2d 975, 977, quoting State v. Harper, 381 So.2d 468, 470-71 (La.1980); La. Const. art. I, § 13 (at every stage of a criminal proceeding a defendant "is entitled to assistance of counsel of his choice"). "The right to the assistance of counsel is so fundamental to the constitutional guarantee of a fair trial that its denial cannot be considered harmless error." State v. Trepagnier, 97-2427, (La.App. 4 Cir. 9/15/99) 744 So.2d 181, 187-88. The right of a defendant to counsel of his choice is implemented by C.Cr.P. art. 515, which states:
Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.
However, the defendant's right to counsel is not absolute. The defendant's right to counsel of his choice "cannot be manipulated to obstruct the orderly procedure of the courts and cannot be *250 used to interfere with the fair administration of justice." State v. Seiss, 428 So.2d 444, 447 (La.1983), (citations omitted). The right must "`be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.'" State v. Trepagnier, 97-2427, p. 8 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 188, quoting State v. Leggett, 363 So.2d 434, 436 (La.1978). "Thus, the Louisiana Supreme Court has repeatedly upheld the trial court's denial of motions made on the day of trial based upon the defendant's dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La. 1983) and cases cited therein." Id.
Defendant filed a pro se motion to dismiss counsel on May 23, 1998.[1] At that time trial was set for May 27. Defendant filed another motion to dismiss counsel, identical to the first, on May 27. A May 27 minute entry reflects that the trial court denied the motion to dismiss counsel on that date, and reset trial for June 3. On June 3, the trial court denied the motion again, and reset trial until June 4. On June 4 a status hearing was reset for June 5. On June 5, trial was reset until July 2. Trial was continued two more times until July 15. Defendant filed two pro se motions to suppress the identification on the same days he filed his motions to dismiss counsel. Two hearings were held to take testimony from Det. Brazley and the victim as to the identification procedure. Defense counsel cross examined each witness, and the trial court denied the motion on May 27. Defendant also filed motions for subpoena duces tecum on the same days he filed the other two motions, seeking production of a transcript or recording of the telephone tip received by Det. Brazley which led to his arrest. The trial court denied these motions on June 3. However, counsel later filed an application for a subpoena duces tecum, which was signed by the trial court on July 13, 1998, ordering the New Orleans Police Department to produce on the day of trial any and all records or tapes pertaining to the tip.
Defendant's first motion to dismiss counsel was filed four days before the initial trial date. The motion was filed within a reasonable time and in a reasonable manner so as not to cause disruption to the scheduled trial. In his motion to dismiss counsel, defendant claimed that counsel "neglected him knowledge of when to file motions," and therefore was ineffective. Motions to dismiss counsel will be denied where the defendant provides "no indication that [his] attorney was incompetent or unprepared or had a conflict of interest that would render him unable to put on an adequate defense on behalf of the defendant." State v. Harper, 381 So.2d 468, 471 (La.1980); State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 537, writ denied, 97-1637 (La.12/12/97), 704 So.2d 1180. Here defendant fails to particularize adequate grounds to dismiss counsel. Defendant does not allege that counsel was unprepared or incompetent, or that counsel had a conflict of interest. Defendant's allegation that counsel failed to inform him of filing deadlines is insufficient grounds for dismissal, thus the trial court had no need to hold a hearing to inquire into the matter.
This assignment of error does not have merit.

PRO SE ASSIGNMENT OF ERROR NO. 4
By this assignment of error, Defendant claims the evidence was insufficient to support his conviction.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine *251 whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Defendant's argument on the issue of sufficiency is limited to identity. He focuses entirely on the credibility of the victim relative to her identification of him. While Defendant does not argue that the trial court erred in denying his motion to suppress the evidence, he does claim that the identification was suggestive, with a substantial likelihood of misidentification.
An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Laymon, 97-1520, p. 16 (La.App.3/15/00), 756 So.2d 1160, 1172. Det. Brazley testified at the motion to suppress hearing that he compiled a six-photograph lineup containing the defendant's photo and presented it to the victim. The victim identified defendant's photograph. Det. Brazley said he did not suggest that the victim choose Defendant's photograph, nor did he promise her anything in exchange for her identification. Det. Brazley testified at trial that the victim made the identification immediately, without hesitation. The victim testified that Det. Brazley did not suggest to her in any way which photograph to choose. There is no evidence that the identification procedure was suggestive.
Defendant also attacks the victim's credibility by claiming that her identification of him was unreliable. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. *252 State v. Green, 98-1021, p. 12 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, 350.
The evidence establishes that the victim had an excellent opportunity to view the defendant during the crime. The victim testified at trial that at one point during the invasion of her home she was in her living room, the first room of the shotgun-style residence, sitting down. She was facing the next room, her bedroom, and watched the defendant rifle through her belongings. She admitted that Defendant had the hood from his sweatshirt on his head for a time, but then took it off. Later, as she and her children were being herded into the bathroom, she accidentally bumped into the defendant. He told her never to do that again, and she replied that she was sorry. Ms Hudson testified that she focused more on defendant than the other two men. She said she would never forget Defendant's face, and that she was positive his photograph was that of the man who robbed her. The crime occurred on November 10, 1997, and the victim made the identification on December 22, 1997.
While there was no physical evidence to link Defendant to the crime, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Jones, 97-2591, p. 7 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169, writ denied, 99-3141 (La.4/7/00), 759 So.2d 91. Additionally, jury's credibility decision should not be disturbed unless it is clearly contrary to the evidence presented. Id.
Viewing all of the evidence in a light most favorable to the prosecution, any rational tier of fact could have found beyond a reasonable doubt that the defendant was the person who invaded the victim's residence on November 10, 1997, with two other men, at gunpoint, and took money and jewelry from her.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, Defendant claims that the guilty plea from the predicate conviction, used to adjudicate him a second-felony habitual offender, was unconstitutional as there was no indication that the trial court advised him of the mandatory and maximum sentences for the offense to which he pled guilty. Additionally, Defendant argues that there was not any indication that he had a full understanding of the nature of the charge to which he pled guilty.
The first issue is whether Defendant preserved his right of review as to these issues. La. R.S. 15:529.1 D(1)(b) provides, in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
Defense counsel filed a written response to the habitual offender bill of information, claiming that the prior conviction was unconstitutional because he had not been fully informed of the rights waived by his plea, and did not understand the charges *253 against him or the nature of the proceeding. Counsel orally objected at trial on the grounds that Defendant had not been properly Boykinized before the prior guilty plea. Therefore, Defendant has adequately preserved his right to raise these issues on appeal.
In State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, this court stated:
LSA-R.S. 15:529.1 D(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (footnotes omitted).
98-1377 at pp. 5-6, 753 So.2d at 937.
In the instant case, the State proved the prior guilty plea; that the defendant was represented by counsel at the time he entered the plea; and that the trial court properly Boykinized defendant before accepting his guilty plea. Defendant claims on appeal that the bill of information, guilty plea, docket master and minute entry from the prior conviction do not reflect that he was advised of the nature of the charge, or of the minimum and maximum penalties for the crime to which he was pleading guilty. These factors are not recognized as Boykin rights and, at the time of Defendant's plea, 1995, there was no other jurisprudential or statutory requirement that a defendant be advised of these factors.[2] Therefore, even under the assumption that Defendant adequately raised these issues at the habitual offender hearing, such action would not constitute the production of "some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea" so as require the State, pursuant to Shelton, to produce a transcript of the colloquy of the guilty plea proceeding. State v. Shelton, 621 So.2d 769, 779 (La.1993).
As to whether Defendant has suffered any prejudice by not being advised of the nature of the proceedings and the sentencing range, the plea of guilty form reflects that the charge to which defendant pleaded guilty was "felon with a firearm." Although Defendant was originally arrested *254 for possession of cocaine at the same time he was arrested for the firearm offense, he was represented by counsel at the time he entered the guilty plea, and there is no indication that he did not know to what offense he was pleading guilty. While Defendant submits that there was a procedural irregularity as to his "full understanding of the nature of the charge to which the plea was being offered," he does not allege that he was unaware of the offense to which he was pleading guilty. Defendant received a sentence of three years at hard labor, without benefit of parole, probation or suspension of sentence, the minimum sentence at that timethe maximum being ten years. Defendant does not argue how he was prejudiced by not being advised of the minimum and maximum sentences before pleading guilty, nor does he argue that he was unaware he was going to receive the minimum sentence. Defendant has failed to show that he was prejudiced in any way by not being advised of these factors. Accordingly, the claims cannot give rise to reversible error. See La. C.Cr.P. art. 921.
There is no merit to this assignment of error.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The date on the motion's affidavit of service.
[2] La. C.Cr.P. art. 556.1(A)(1) now provides that a court shall not accept a guilty plea until advising a defendant of "[t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum penalty provided by law." La. C.Cr.P. art. 556.1 was added by Acts 1997, No. 1061, § 1, effective date, August 15, 1997.